UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

JOHN OGBODO EZE
    Petitioner,

v.

JOHN ASHCROFT
    Attorney general
    Respondent,

Case no. _____

Alien number A90-648-128

---

PETITIONER's MEMORANDUM OF LAW
IN SUPPORT OF STAY OF REMOVAL

In support of his motion for Stay of Removal, Petitioner, Mr.Eze, herein states the following:

FACTS

Mr.Eze is a native and a citizen of Nigeria. He was admitted into this country as a non-immigrant student on Dec.30,1977 and had remained here continuously since then. Mr.Eze was accorded the status of temporary resident of the United States in May of 1988 under the Amnesty act of 1986. Since 1990, the service has made three attempts to terminate mr.Eze's resident status and has reinstated it twice, with the last termination occurring on May,20 1991, the termination the service had claimed respondent failed to appeal, according to government testimony during Mr.Eze's deportation proceedings of 2003 before "IJ" petricia sheppard; See(TR_____). The facts respecting the circumstances and dates of terminations and reinstatements are very cofusing, indeed, as reflected on the transcripts of proceedigs before "IJ"Patricia Shapperd where these facts were first developed. what is not confusing is that the service virtually ignored agencey regulations and notice requirments when dealing with Mr.Eze.

However, on August 17, 2004 the service filed with the U.S.court of Appeals, first circuit, a "NOTICE of Intent to Remove" Mr. Eze on or about September 22, 2004. A copy of said "NOTICE of intent to remove" was served on Mr. Eze by the service.

On or about August 24, 2004, the service attempted to apply for travel documents with the Nigerian Embassy in washington D.C. Mr. Eze was interviewed by his Embassy official on the status of his DHS matters. There, Mr. Eze claimed that he filed a petition for review with the first circuit on August 16, 2004, and intends to exhaust his judicial review rights. Mr. Eze also correctly pointed out to the Service and the Embassy official that the Immigration court and the BIA have no jurisdiction over the merits of the termination or rescission of his resident status. Matter of Rodriquez Esteban, Interim Decision,3115 (BIA); Matter of Volos, 12 I&N Dec.

The UNITED STATES DISTRICT COURT Jurisdiction over this matter as is in evidence in case lwas and regulations. Consequently, it would be unlawful and unjust to deport an alien over an administrative order rendered by an administrative agency which assert they have no jurisdiction over the merits of the termination.

4. Mr. Eze is therefore subject to being physically removed at any time in spite of the fact he has filed a petition for review.

5. Mr. Eze contends that immigration judge's finding denying him relief from removal as well as finding that the Service terminated his status according to regulatory requirements were contrary to statute, regulations and case precedent. The Board's affirmation of the "IJ" decision without mention any evidence of any evidence on the record it had relied upon is a violation of due process and an abuse of discretion. The attached memorandum of law in support of his motion summarizes Mr. Eze's arguments thereby indicating a strong likelihood that he will succeed on the merits Pursuant to his petition for review, MR. Eze is prepared to further brief and argue his claims before this court.

6.
6. Mr. Eze had filed a petition for a writ of habeas corpus with this court(U.S.District Court) before **HON.** judge Nancy Gertner in June of 2003. That action was dismissed by this court without prejudice, to be refiled upon the conclusion of the administrative proceedings with the BIA should Mr. Eze recieve an adverse decision. Attached is a copy of the BIA decision and Mr. Eze presently wishes to refile the action which he had appealed to the First Circuit.

Mr. Eze has a meritorious claim which require that this court grant him declarative and mandatory injunctive relief by reinstating his resident status which he was statutorily and legally entitled to when it was issued Mr. Eze was not statutorily ineligible for his resident status since he had no record that would have rendered him ineligible when he acquired his status.

On february 4,2003,Mr.Eze was arrested by the "DHS" in Boston and was served with a notice to appear.The "NTA" charged that MR.Eze was an alien lawfully admitted in to the united States and was granted a temporary residentce status which the service claimed was terminated in 1991.Because of the termination,the NTA further stated,Mr.Eze is now subject to removal proceeding as alien rendered out of status because of the termination; Mr.Eze has remained under the custody of "DHS"since his arrest in february04,2003.

Following a deportation trial before visiting "IJ" Michael Straus on November13,2003,in which Mr.Eze was not represented by counsel Mr,Eze was ordered deported for being out of status because of the unlawfull termination of his status by the service.The Board affirmed this deportation order by a decision dated July20,2004, notwithstanding the service introduced no evidence at trial to demonstrate the manner,place and time service of notice was complied with.

The immigration court burfocated Mr.Eze's deportation hearings and denied him the opportunity to apply for relief even though he could have been found to be eligible for suspention of deportation,adjustment of status as an alien investor,adjustment of status through a petition by his U.S.Citizen girl friend of seven years,and certainly was eligible for voluntary departure having resided here since 1977 continuously and had only two misdemeanor convictions which were not deportable-See proceedings before "IJ" Michael Straus.

The "DHS" counsel neither appealed the "IJ" order that Mr.Eze's convictions(petty offenses) were not crimes involving moral--turpitude and were not deportable, nor opposed his(Mr.Eze's) appillate brief with the Board.

Mr.Eze's had requested time to subtitute his appellate brief  and to submit supplemental brief with the Board.Still,it took the BIA less then three weeks of receipt of Mr.Eze's appellate brief to render a decision.

(2)

Mr.Eze's contends that the Board did not properly evaluate his claim of due process violations in the case which necessitated the use of a visiting "IJ" Michael Struas who was brought in just to dispose of this matter and the assignment of his case to a court administrator.Notwithstanding the seriousness of the due process violations in this matter,the Board takes the position that "IJ" Sheppard should not have recused herself.

The Board also failed to even address numerous issues of constitutional importance Mr.Eze had argued in his brief;denial of his motion for appointment of counsel,failure to consider his eligibility for suspention of deportation ,failure to consider him for adjustment of status as an investor in Paramount Tour and Charter Inc.,the company founded,the government failure to comply with Mr.Eze's repeated requeests for discovery and due process violations by place of detention.

Mr.Eze's presently contends that the "IJ" and the Board abused thier discretion by making erroneous findings of facts and misapplying the relevent law.
Although the Board acknowledged that the service violated notice requirments and engaged in hasty prosecution of this case,it concluded that requirment were ultimately followed in the termination of Mr.Eze's resident status,without stating what evidence it had relied on to reach this conclusion.
The real problem with this case is that "IJ" Michael Straus did not have the time and the patience to understand the facts of the case and appearently the Board did not fully and adequately examine government's testimony before "IJ" sheppard regarding the basis of "IJ" Bagley's termination of deportation proceedings in 1993 and the circumstances surrounding Mr.Eze's warrantless arrest and detention when he signed the outdated notice.
presently contends that the "IJ" and the Board abused
Because the Board is not a fact finder,it is in no position to develop such facts and should have remanded the case to the Immigration Court.

## LEGAL ARGUMENTS

8 CFR § 245a.2(u)(2) states in pertinent part:"termination of an alien's temporary resident status under paragraph (u)(1) of this section will be made before instituting deportation proceedings against a temporary resident alien <u>and only on notice sent to the alien by certified mail directed to his or her last known address,and to his or her representative,if any</u>,The alien must be given opportunity to offer evidence to the the grounds alieged for termination of his status;(emphasis added) Mr.Eze did not recieve a notice of intent to terminate from the DHS.Mr Eze;therefore,did not have the opportunity to submit evidence to rebut the grounds for termination of his temporary resident status, as required by statue.The mere signing of an out dated termination notice nowhere satisfies 8 C.F.R.§ 245a.2(u)(2)

Mr.Eze also raises the issue of the failure of government to adhere to it's own proceedures and case law as set by CFR and <u>Matter of Medrano</u>  8  C.F.R.§  245a.2(u)(2)  contemplates  a two-step process:

1)   The sending of NOI(Notice of Intent) by mail to the alien;
2)   The sending of a decision-again by mail-to the alien

To  constitute  valid  service,the  two-atep  process  must  be satisfied.

In 1991,the IJ terminated deportation proceedings because <u>Medrano</u> was not satisfied.Mr.Eze reverted back to the temporary resident status.

In  1993,the  IJ  terminated  deportation  proceedings  because according to the government's chief counsel"...respondent still had his right of appeal..."(TR at <u>5-8</u>).The Board has also made <u>the determination that the IJ terminated deportation proceedings inin 1993</u> because of a notice defect.appearently,the board has access to IJ Bagley decision of 1993 which the service and the immigration judge claimed they had no record or copy of but for which the deportation order was based on.

(4)

Nevertheless, the service re-served decision of 1991, without re-serving a new NOI(Notice Of Intent);because of <u>Medrano</u>,the service was sopposed to start termination proceedings all over again by begining with NOI and not just re-serving the old decision.

Mr.Eze further contends that his due process rights were violated when the IJ and the Board erroneously concluded that the service followed adequate procedures to terminate his resident status.

Lagal papers given to an alien while in custody without oppurtunity for legal advice should not constitute effective service.Custody,by it's own term,is a form of duress.

Mr.Eze also has issues with the only notice of intent to terminate which was recieved into evidence during his 2003 deportation proceedings.

The BIA has held that a decision to revoke appeoval of a visa petition <u>will not</u> be sustained where the notice of the intention to revoke was not properly issued.<u>Matter of Estime,</u> Interim decision 3029(BIA 1987).Moreover,pursuant to 8 C.F.R. § 103.2(b)(2),the NOI to revoke must include specific statements not only of the facts underlying the proposed action but also the supporting evidence e.g.the investigative report.see § 205 of the INA,8.U.S.C.§1152.It follows that by regulations and caselaw,the service has not complied with the termination requirments and proceedure.Mr.Eze's status was terminated in violation of the law and consequently he continues to retain his status unitl properly terminated.

Moreover,service of outdated termination notice by DHS in Boston in 1993 was defective to the extent that jurisdiction rest with the Regional Service Centre in vermont and notwith Boston.

It appears that the service committed the very same blunder which resulted in termination of proceedings in the early 1990's.

A finding by the IJ and the Board that Mr.Eze's deportation proceeding was terminated in 1993 by IJ Kenneth Bagley because of defective service of notice or a procedural defect establishes the presumption that Mr.Eze continued to retain his resident status in January of 1993.

The Board's opinion that proper procedural methods for termonation ultimately were observed,See 8 C.F.R § 245a(2)(u)(2), is without merits as it made no refrence to any evidence on the record which it had relied on to reach this conclusion.the IJ never never required the service to produce evidence on how "the respondent was personally served with the notine to deny."Except for the introduction into evidence of respondent's signed outdated termination notice which the IJ erroneosly admitted,the service introduced no evidence at trial to show how notice was effected in 1993.

the service claim that Mr.Eze had misrepresented facts to procure immigration benifites is without merits,absent any showing that he wilfully misrepresentted material fact.The law on misrepresentation is very clear,even a wilful misrepresentation will not bar an alien from obtaining an immigration benefit so long as it is not a material fact.However,nothing in the facts of this case presents a case of material misreprent if there is any misrepresentation at all.

nor is the service entitled to shift the burden to Mr.Eze to demonstrate that the largely fabricated charges he accummulated after he aquired his resident status must be dismissed in order toto retain his resident status as no where in the regulation is this contemplated.

## DUE PROCESS VIOLATION

Mr.Eze interprets both the statutory language and due process guarantees applicable duration proceedings to mean that an OSC must be served on the respondent and that the IJ must read the OSC alien in a language that the alien understands and that the service must provide actual proof that an OSC was indeed served on the respondent according to regulations,not just mere allegations that alien was personally served.It also requires that the service not preclude the alien from attending his own deportation hearing.

Mr.Eze reads this standards to requir,further,that the respondent be afforded a reasonable and meaningful opportunity to comply with the requirments of the statute,as expressed and implemented through regulations.A flawed process,as existed on the outdated notice of termination,prejudices the respondent,compromising his interest both in being present at his deportation proceedings and being in a position to answer the charges against him. Administrative proceedings in which a respondent may be ordered deported from the United States involve the the potential depravation of a significant liberty interest and must be conducted according to the principles of fundamental fairness and substantial justice.Landon v. Plasencia,459 U.S.21,34-35(1982). The statute provides that deportation shall be determined only on a record made in a proceeding "before a special inquiry officer" and that a respondent must be provided a "reasonable opportunity to be present". §242(b)of the act.8 U.S.C. §1252(b)(11994);See also Maldonado-Perez v.INS,865 F.2d 328,333(D.C.cir.1989)(holding that the act implements constitutional requirements of a fair hearing);Matter of Huetts,20 I&N Dec,250,253(BIA 1991):(holding that the respondent did not have a reasonable opportunity to be present where he was not properly served with the order to show cause(OSC).

The right to be present at one's deportation hearing arises not only from the statutory scheme and due process consideration which involve issues of personal liberty.It springs also from the expressed desire for reliability in deportation proceedings which often involve highly complex facts regarding a respondents attributes and require respondent's testimony to properly adjudicate the case.Purba v. INS,884 F.2d 516,517-18(9th cir.1989)(holding that the statutory language of section 242(b) combined with significance of credibility determination in deportation matters,supports rule requiring physical presence before the immigration judge;Akbarin vs.INS,669,F.2d 839,845(1st cir.1982) holding that fair hearing required that respondent be permitted to present oral testimoney in proceedings before IJ.

(7)

The outdated termination notice Mr.Eze had signed while under DHS custody in 1993 was deficient in so many ways:First,it is inadmissible because it is the fruit of warrantless arrest and detention and the egregious violation of the Fourth Amendment rights of Mr.Eze. Orhorhague vs. INS 38 F.3d 486 (9th cir.1994); Adamson vs. C.I.R 745 F.2d 541 (9th cir.1984).

During Mr.Eze's deportation hearing IJ Michael Straus,Mr.Eze did not raise the suppression issue but he is not precluded from raising it before the Board,which Mr.Eze did.Nevertheless,the Board makes the determination that although the sevice was defective in the early 1990's,ultimately the Service complied with the regulations when it terminated Mr.Eze's status.The Board made no refrence to any probative evidence it had relied upon to reach this conclusion except conclusory allegation that personal service was made by the Service which both the IJ and the Board adopted without proof.

In matter of Sondoval-Sanchez(468 U.S. 1038)(104 S.Ct.3483),the U.S. Court of Appeals ruled that Sandoval-Sanchez detention by INS officers violated the Fourth Amendment,that the statement he made were a product of that detention,and that the exclusionary rule barred their use in a deportation proceeding.The deportation proceedins against Sandoval-Sanchez were accordingly reversed. See U.S. vs. Janis,428 U.S.433(1976).
Although the U.S.Supreme court reversed the court of appeals in Sandoval-Sanchez, the factual account of Mr.Eze's arrest and detention and the conduct of the agents in precluding him from his own deportation hearing clearly costitute egregious conduct to warrant exclusion of his signed outdated document.Orhorhague vs.INS, 38 F.3d 486 (9th cir.1994):Gonzales-Rivera vs. INS

Because the government,through counsel,admitted that IJ Kenneth BaBagley terminated deportation proceedings against Mr.Eze(TR at 5-8),and the fact that the DHS agents obtained Mr.Eze's signature by violatin his Fourth Amendment right when he was arrested and detained without a warrant and without the benifit of the advice and explanation contained in regulation 8.C.F.R §

(8)

287.3,Mr.Eze's status was terminated in violation of agency regulation as a matter of law.

Given that the IJ Bagley terminated deportation proceedings in 1993 because the notice requirments were not met and exclusionary rule mandates the exclusion of evidence which is the fruit of violation oOf Mr.Eze's Fourht Amendment rights,the exclusion of outdated termination notice which he signed while under DHS custody leaves the deportation order void.<u>INS Vs. LopezoMendoza,468 U.S. 1032: Woodby Vs. INS 385 U.S.276 (1966)</u> 8 C.F.R 242.14(a).

There is no doubt that the Service violated the notice requirment again following IJ Bagley's termination of deportation proceedings.By having Mr.Eze sign an outdated copy of the termination notice instead of re-issuing a new NOI to terminate residence status, the Service committed a serious error.The Service committed an other violation of regulation when Boston Agents re-issued the outdated termination notice because Boston had no jurisdiction.The Vermont Service Centre has jurisdiction as was clear from the earlier termination of proceedings.This was the very same reason why the termination notice issued by Boston was voided in 1990.

The Board clearly erred when it concluded that although the Service committed several blunders in it's hasty attempts to terminate Mr.eze's status,the Service ultimately followed regulations to terminate Mr.Eze's residence status.

It is true that IJ and the Board do not have the jurisdiction to make any decision respecting the validity of merits of the grant,denial,revocation or termination of an immigration benifit but they must make determinations as to whether termination ,rescission or revocasion of immigration benifits comply with duly promulgated agency regulations and the statute with the aim of ensuring that due process of the law is adhered to. <u>Matter of Volos,12 I&N Dec.44;Matter of Rodriguez-Esteban,Interm decision</u> ----------------------------------;8 C.F.R--------------------------------

When Mr.Eze and his attorney of record asserted they did not receive notice of intent to terminate and of the actual termination in 1991,the Service naturally shall bear the burden of establishing by a preponderance of evidence that Mr.Eze's status was terminated according to regulations Woodby Vs.INS 385 U.S276(1996),8.C.F.R 242.14(a).The IJ and the Board erroneously placed placed the burden on Mr.Eze(rather than on the service) to show that the termination was not according to law.Clearly,the burden is on the service to show how"respondent was personally served"and how that service was effected and whether 8 C.F.R.§245 a.2(u)(2) was satisfied.

The only evidence on the record is a copy of a signed expired/outdated two years old termination notice which Mr.Eze was pressured into signing.An expired termination notice has no legal significance and,although it establishes Mr.Eze's knowledge that his status was terminated by the Service,legally or not,such evidence is clearly excludable under the exclusionary rule because of the engregious violation of Mr.Eze's fourth Amendment rights during his warrantless arrest and detention in 1993.

Exclusion of this signed notice leaves the deportation order unsupported by clear,convincing and unequivocal evidence as required by Woodby Vs. INS 385 U.S. 276 (1996).

Mr.Eze is entitled to the record of his own deportation proceeding before IJ Kenneth Bagley in 1993 wherein MrEze was excluded notwithstanding he was under DHS custody pursuant to a warrantless arrest and detention.The transcript and record of the proceeding would be important to prove the nature and manner of arrest by the DHS agents,whether a copy of the OSC was served on Mr.Eze as required by regulations and,if service was made the manner,time and place of the service,including any record of Mr.Eze's signature acknowledgeing reciept of osc,any record of Mr.Eze's attendentance at his own deportation hearing either in person or through televideo conferencing.The Service introduced no evidence at Mr.Eze's deportation hearing before IJ Michael Straus,and in fact,the record will reflect that the DHS counsel denied having even a copy of the decision(TR      ) Still,the

Service was quick to introduce into evidence a copy of the outdated notice of termination notice which Mr.Eze signed under duress during his custody.

The BIA's arguement that Mr.Eze's due process reghts were not violated when he was excluded from his own deportation hearing because IJ Bagley's decision was in Mr.Eze's favor clearly missed the point.Mr.Eze had not argued that the decision was not in his favor.Indeed the Board seemed to have ignored that INA regulations were put in place to prtect rights of aliens and that the notice requirments were intended to prevent the kind of miscue which has resulted in Mr.Eze's lengthy detention under DHS custody today.

Had the DHS agents procurred Mr.Eze's attendance at his own deportation hearing,the IJ Bagley would have explained to Mr.Eze his rights with respect to his terminated status:Whether a new NOIwould have been appropriate and what process would be inolved in appealing a termination which was almost two years old would have been matters th IJ would have explained to Mr.Eze.

Mr.Eze simply cannot accept the BIA's suggestion that he be sujected to a proceeding which amounted to a "kangaroo" court and that even the minimum requirments of due process of the law as guarnteed by the U.S. costitution must be thrown out the window.

The Board decision in this matter clearly represents a departure from virtually all it's prior opinions and holdings with respect to due process and notice requirments imposed by agency regulations.<u>Matter of Saunders,16 I&N Dec.326 (BIA,1977);Matter of Estime, Interm Decision 3029,(1987);Matter of Rodriguez-Esteban Interm decision,3115(BIA).</u>

No court in this land has ever accepted tha notion that a deportation proceedings wherein the alien is excluded from his own deportation hearing while under the DHS custody (whether intentionaly excluded or mere inadvertence) meets even the minimum of due process rights as guarnteed by the costitution notwithstanding the out come might have been in the alien's favor.

This is simply not a case of harmless error as the Board's opinion would suggest. Mr.eze was clearly prejudiced to the extent that the Service,the IJ and the Board have implied that the IJ Bagley had authorised Mr.Eze to appeal a termination almost two years later,or that the Service had authorised such an appeal,presumably,as a result of the proceeding,furhtermore,neither the immigration judge nor the BIA has the authority to extend the appellate period set by statute. 8 C.F.R _____ Rodrigues-Esteban Interm decision,3115(BIA); Matter of Volos 12 I&N Dec.44 (BIA,4967.)

There is no doubt that the Service again violated the notice requirment when the IJ terminated Mr.Eze's deportation proceedings in 1993.8 C.F.R §245 a(2)(u).The Service failed to initiate the termination process by failing to issue a new
 NOI,which would have allowed the respondent the opportunity to be
  heard and to present any evidence. The Service rather burfocated the process by talking Mr.Eze into signing an outdated termination notice which copy was never given to him.There is no doubt that the Service never followed their own regulation and there is not a single evidence introduce at Mr.Eze's deportation hearings in 2003 to sugggest that the Vermont Service Centre authorised this appeal.

  Mr.Eze has demonstrated that his status was terminated in violation of the agency regulation.He has also shown that his due process has been violated by the BIA and the immigration court and the Service,sustantial documentry evidence will shows that Mr.Eze's equal protection rights were violated,first by the Service and then by the Immgration court and that he suffered injustice both under law enforcment officials and at the hands of DHES agents and the immigration court.
  Mr.Eze was physically assaulted on several occassions by both law enforement officials and by the DHS Agents.He was a vitim of malicious prosecution and fabricated charges which prejudiced him to the extent he has compiled a criminal record which depicts him as a criminal,when infact he is not.

Mr.eze will, given the opportunity and with a help of counsel present evidence which will sustain all his allegations against law enforcement officials who fabricated charges against him.

<u>INA § 242 (f)(2),8 U.S.C.§1252 (f)(2)</u>,provides that,"not withstanding any other provision of law,no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry or execution of such order is probihited as a matter of law." Because Mr.Eze has a meritorious claim for resident status,he is entitled to injuctive relief in the form of a stay of removal.

If a stay of removal is not granted by this court,the harm to Mr.Eze greatly outweighs any perceived harm to the government. Mr.Eze has been in this country since 1977,approximately 27 years and has been detained in jail under DHS for a year and a half now for what assuredly would be adjudged an unlawful detention.He has no known conviction which is deportable and posses no threat to community nor is he a flight risk.

Mr.Eze only asked toremain while this court makes a decision on his petition for review.The government's interest in the timely inforcement of the immigration laws will not be obstructed in any way if Mr.Eze is allowed to remain here pending the outcome of his case.

Additionally,it is in the public interest for the court to grant a stay of removal in this case.Governmental action which on the face of it has no ligitimate reason cannot be sustained by any court.

CONCLUSION

For the foregoing reasons,Petitioner's Motion for a Stay of Removal should be granted.

Respectfully Submitted,

Jhon Ogbodo Eze,Pro Se.

## MERITS OF THE TERMINATION

With respect to the termination of respondents resident status, a determination of statutory ineligibility is not valid unless based on evidence contained in the record of proceeding. 8 C.F.R.§§ 103.2(b)(2), 205.2 (b)(1987); Matter of Mata, 15 I&N Dec. 524 (BIA); See also Matter of holmes, I&N Dec. 647(BIA 1974); Matter of Arteaga-Godoy, 14 I&N Dec. 226(BIA 1972).

In determining what is "good and sufficient cause" for the issuence of a notice of intention to revoke, we ask whether the evidence of record at the time the record was issued, if unexplained and unrebutted, would have warranted a denial based on the petitione's failure to meet his/her burden of proof.
Further, pursuant to 8 C.F.R.§ 103.2(b)(2)(1987), the notice of intention to revoke must include a specific statement not only of thefacts underlying the proposed action, but also of the supporting evidence (e.g., the investigative report).
similarly, with respect to a decision to revoke, we ask wether the evedence of record at the time the decision was issued(including-
-any explanation, rebuttal, or evidence submitted by the petitioner pursuant to 8 C.F.R §§ 103.2(b)(2) or 205.2(b)(1987) warranted such a denial.
Where a Notice Of Intention(NOI)to revoke is based on an unsupported statement or an unstated presumption, or where the petitioner is unaware and has not been advised of derogatory evidence, revocation of the visa petition cannot be sustained, even if the petitioner did not respond to the Notice Of Intention (NOI) to revoke. Matter of Estime, Interm decision, (BIA, 1987).
<u>Matter of Saunders</u> 16 I&N Dec. 326 (BIA 1977).



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

EZE, JOHN OGBODO
B.C.S.O.    A#: 90-648-128
400 Faunce Corner Rd.
North dartmouth, MA  02747

Office of the District Counsel/BO
P.O. Box 8728
Boston, MA  02114

Name: EZE, JOHN OGBODO                                  A90-648-128

Date of this notice: 07/20/2004

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Panel Members:
    HESS, FRED

a motion to reopen with the Vermont Service Center, the status of which is not known (*see* I.J. at 3-5). The respondent admitted that he failed to file the proper fee with his motion to reopen but did not receive a response (I.J. at 5; Tr. at 116).

On January 27, 2003, the DHS issued a Notice to Appear (the language for the charging document, formerly "Order to Show Cause" having changed), charging the respondent with removability for having violated the conditions of his nonimmigrant status under section 237(a)(1)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(C)(i), and subsequently lodged an additional charge of removability against the respondent under section 237(a)(2)(A)(ii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(ii), for having been convicted of two crimes involving moral turpitude. Specifically, the respondent was convicted on October 15, 1992, of disguising himself with the intent to obstruct the due execution of law, or to intimidate, hinder or interrupt an officer in the lawful performance of his duty in violation of Massachusetts general law and was also convicted on April 28, 1999, of piracy (essentially, knowingly selling or manufacturing tapes illegally) (Exhs. 12 & 14).[2]

In a decision dated July 18, 2003,[3] an Immigration Judge (Judge Sheppard) found the respondent removable on both charges, denied the respondent's motion to terminate, and found the respondent ineligible for cancellation of removal and voluntary departure. However, Judge Sheppard then rescinded her order of deportation, reopened proceedings, and had proceedings transferred to another Immigration Judge.[4] On November 13, 2003, after a new hearing was held, Judge Straus found the respondent removable under section 237(a)(1)(C)(i) of the Act, but did not sustain the charge under section 237(a)(2)(A)(ii) of the Act (I.J. at 5-6). Therefore, Judge Straus denied the respondent's motion to terminate and also found the respondent ineligible for cancellation of removal and voluntary departure.

The Department of Homeland Security has not appealed the Immigration Judge's decision. On appeal, however, the respondent argues that the Immigration Judge erred in finding that his status as a temporary resident was terminated and, therefore, that he was subject to removal. Furthermore, the respondent asserts that the Immigration Judge improperly pretermitted his request to adjust status and asks that we either terminate or remand proceedings due to due process violations by the Immigration Judges and the DHS.

First, we find no error in the Immigration Judge's decision finding the respondent removable for having failed to maintain his status and denying the respondent's request for termination. In his brief on appeal, the respondent argues that since his previous deportation proceedings were terminated and no one told him of his right to appeal the termination of his temporary status, he thought "his immigration problems were

---

[2] The respondent also has numerous other arrests as well as one other conviction (*see* I.J. at 4).

[3] We note that this decision is actually dated November 13, 2003; however, this is clearly a mistake (*see* Tr. at 84, 88) and the parties do not dispute that the decision was actually rendered on July 18, 2003.

[4] Originally, the proceedings were transferred to Judge Shapiro and then to Judge Straus who ultimately rendered the decision in the respondent's case.

2

over." The respondent was personally served with the notice to deny his temporary resident status and he does not deny that he was aware that his status had been terminated. The respondent produced no evidence to support his assertion that this form was signed under duress. Moreover, it is clear that the proper procedural methods for termination ultimately were observed. See 8 C.F.R. § 245a.2(u)(2). As correctly pointed out by the Immigration Judge, such termination acts to return the respondent to the unlawful status he held prior to the adjustment (I.J. at 7). See 8 C.F.R. § 245a.2(u)(4). Since the respondent no longer attends the university for which he was granted nonimmigrant student status, he is properly charged with, and found removable for, violating his status of admission. Accordingly, we affirm the Immigration Judge's decision finding the respondent removable.[5]

The Immigration Judge also correctly found that the respondent was ineligible for relief from removal.[6] The respondent does not have a qualifying relative for cancellation of removal and, since the respondent lacks a valid travel document, is not eligible for voluntary departure (I.J. at 8). See sections 240A(b)(1)(D) and 240B(b), 8 U.S.C. §§ 1229b(b)(1)(D), 1229c(b); see also 8 C.F.R. §§ 1240.26(c)(1) and (2). We also find no error in the Immigration Judge's denial of voluntary departure as a matter of discretion (I.J. at 8).

Finally, we find no due process violations which would merit termination or a remand for a new hearing. There is no support for the respondent's assertion that Judge Sheppard recused herself due to a DHS attorney's misconduct; rather, Judge Sheppard indicated that she had been overworked on the day of the hearing and felt that her lack of patience may have limited the respondent's opportunities for an impartial hearing (Tr. at ).[7] We find no indication that Judge Sheppard was anything but fair during the hearing, particularly in light of the respondent's numerous interruptions and failure to follow directions (Tr. at 66-

---

[5] In addition, we note that as correctly stated by the Immigration Judge (I.J. at ), we do not have authority to reevaluate the DHS's termination of the respondent's resident status as proper authority to adjudicate such an appeal lies with the AAU. 8 C.F.R. § 245a.2(u)(2)(i). We also decline to address the respondent's argument that his bond was set too high and that the amount should be redetermined. See Matter of P-C-M-, 20 I&N Dec. 432 (BIA 1991) (custody and bond hearings are separate from deportation or removal hearings).

[6] We decline to find that the respondent should have been granted a continuance in order to allow the respondent to marry his United States citizen girlfriend who he asserts would file a visa petition on his behalf. If it is true, as asserted by the respondent, that he has been involved with his girlfriend for seven years, then he certainly has had sufficient time to attempt to marry and to adjust his status pursuant to section 245; furthermore, the respondent has been aware that the DHS intended to remove him since at least 1988. A continuance is not warranted in this case. See Matter of Sibrun, 18 I&N Dec. 354 (BIA 1983); 8 C.F.R. § 1003.29.

[7] Judge Sheppard also indicated that she had made an ex parte comment, albeit benign and not related to the merits of this case, to an attorney (Tr. at 87-88). However, she indicated that her primary reason for rescinding her previous decision and transferring the case to another judge was due to her loss of patience (Tr. at 88).

3

79), and the respondent's assertion that a change of venue should have been granted is not supported by evidence. Specifically, the respondent's belief that Judge Strauss found him removable only to protect Judge Sheppard and the DHS ignores the fact that the respondent's temporary status had been terminated and he had violated his original status of admission because he no longer attends school.[8] While there was clearly some confusion in the early 1990s caused by the DHS's hasty prosecution of this case prior to terminating the respondent's residency which resulted in the termination of the first two Orders to Show Cause, the Immigration Judge in these proceedings properly found that the procedural requirements for termination had been met and that the DHS had established removability under section 237(a)(1)(C)(i) of the Act.

ORDER: The respondent's appeal is dismissed.

_____
FOR THE BOARD

---

[8] The respondent insists that his convictions, and the resulting deportation proceedings, are due to police harassment and false charges brought by officials who are xenophobic. There is simply no evidence that this case was somehow concocted by the DHS as a further example of government officials engaging in hate crimes.

4