FOR THE DISTRICT OF MASSACHUSSETTS

JOHN OGBODO EZE
(Petitioner)

VS.

JOHN ASHCROFT
(Respondent)

Civil Action No.
04 CV 11949-NG

PETITIONER'S MOTION FOR ALLOWANCE/EXTENTION OF TIME TO FILE BRIEF AND MEMORANDUM OF LAW NUNC PRO TUNC OPPOSING RESPONDENT'S "MOTION TO DISMISS AND STAY OPPOSITION"

Now comes the Petitioner, John Ogbodo Eze, who respectfully moves this Honorable Court grant him an extension of time necessary to file brief and Memorandum of Law in opposition to Respondent's "Motion To Dismiss and Stay Opposition." As grounds, therefore, petitioner hereunder states the following:

1. On or about September 14th, 2004,

[illegible] respondent's Motion and Memorandum of Law in Support of "Motion to Dismiss and Stay Opposition."

2. By a notice dated September 8th, 2004, and filed with the U.S. Court of Appeals, First Circuit, the DHS advised the Court of Appeals of DHS' intent to remove the petitioner on September 22, 2004, pursuant to administrative "final order" issued by the BIA.

3. A similar advice was also incorporated in Respondent's "Motion to Dismiss and Stay Opposition" filed with this Court.

4. On September 17, 2004, petitioner was moved from Bristol County Jail, North Dartmouth, Mass to Suffolk House of Correction, Boston, Massachusetts where he is currently detained under DHS Custody.

5. Between September 17, 2004 and ~~Octobe~~ October 2nd, 2004, petitioner did not

have access to his legal papers because of the constant movement this failed removal attempt had caused. Furthermore, petitioner has been informed he needed a two-week waiting period to have access to a type writer for his legal work and he has been unable to use the phone to contact the Clerk of Court to apprise the Court of his situation.

6. Petitioner is unrepresented by Counsel and therefore could not otherwise respond to respondent's motion given above legitimate circumstances. Petitioner has presented valid due process claim cognizable under 28 U.S.C § 2241, among other claims, as hereunder stated.

7. On Tuesday September 21, 2004, Mr. Eze was transported to Batavia, NY, for a September 22 2004 removal to Nigeria. However, the DHS, who never had travel documents, was unable to secure one and so the removal was ~~to~~ averted.

Then, on September [illegible] Mr. Eze was returned to Suffolk County Jail, Boston, Massachussetts, where he is currently detained. Mr. Eze now has access to his legal materials and would like to prepare and type his opposition to respondent's motion!

The Supreme Court's ruling in St. Cyr, 533 U.S. 289, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) and The following caselaws; Calcano-Martinez vs. INS, 533 U.S. 348, 150 L. Ed. 2d 392, 121 S. Ct. 227 F. 3d 71 ( 2268 (2001); Liu v. INS, 293 F. 3d 38, 39-41 (2d Cir 2002) (suggesting that habeas relief remains available to non-criminal aliens who challenge removal orders on constitutional grounds); Chmakov v. Blackman, 266 F. 3d 210, 215-216 (3rd Cir. 2001) (same); Riley v. INS, 310 F. 3d 1253, 1256-57 (10th Cir. 2002) (same); Requena-Rodriguez vs. INS, 190 F. 3d at 305-06, among other

[illegible] claims that habeas jurisdiction under 28 U.S.C. § 2241 was not repealed by AEDPA and IIRIRA and that the District Court has subject matter jurisdiction notwithstanding petitioner's petition for review filed with The First Circuit.

The Supreme Court has held that pure questions of law, such as the eligibility question presented by petitioner St. Cyr are reviewable under the habeas Corpus jurisdiction conferred by § 2241.

Moreover, The Supreme Court has made it quite clear that there are two rationales in support of the conclusion that habeas is preserved for aliens subject to a final order of deportation. The first is "the strong presumption in favor of judicial review of administrative action..." St. Cyr, 121 S. Ct. at 2218. The second is "the longstanding rule requiring a clear statement of congressional intent to repeal habeas jurisdiction." Id.

In this claim, Mr. Eze asserts a violation of due process and equal protection rights. Even under the most restrictive readings of § 2241 after the 1996 amendments, Courts have acknowledged that habeas jurisdiction is

appropriate ... error. Rueckert vs. Jenifer, 937 F. Supp. 1245, 1252-53 (E.D. Michigan, 1996), or a "fundamenta miscarriage of justice." Eltayeb v. Ingram, 950 F. Supp. 95, 100 (S.D. N.Y. 1997), Mbiya vs. INS, 930 F. Supp. 609, 612 (N.D. Ga. 1996).

In Chmakov v. Blackman, 266 F.3d 210, the U.S. Court of Appeals for the 3rd Circuit was faced with the legal question: did the District Court have jurisdiction to entertain a habeas corpus petition alleging a Fifth Amendment due process violation filed by aliens subject to a final order of removal for reasons other than a conviction {266 F.3d 212} for a deportable crime?

There, the court held that "Because the Supreme Court has concluded that Congress has not explicitly stated its intention to strip the federal courts of their habeas jurisdiction over petitions filed by aliens, whether these aliens be criminal or non-criminal aliens, we answer that question in the affirmative." The Court of Appeals there reversed the district court which had dismissed the petition for lack of jurisdiction.

[illegible] Chmakov's

determined that an alien challenging a deportation order on the basis of an alleged due process violation would historically have had the right to seek habeas relief in district court prior to 1996. It added that following St. Cyr, "it is incontrovertible that aliens being deported on the basis of certain criminal convictions would still have that right. We see no reason to conclude that non-criminal aliens should be treated differently."

The DHS argument that although the relevant provisions of AEDPA and IIRIRA do not evince a congressional intent to repeal habeas jurisdiction for criminal deportees, they do evince such an intent to repeal habeas jurisdiction for non-criminal aliens was also rejected by the ___ Circuit when it stated " That argument borders on the nonsensical. The Supreme Court has held that these provisions have a particular meaning, and that meaning does not indicate a congressional intent to repeal habeas jurisdiction. It simply cannot be that the meaning will change depending on the background or pedigree of the petitioner... We, therefore, ~~conclude~~ conclude that Congress has preserved the right to habeas review for both criminal and non-criminal aliens."

writ of habeas corpus extend to those situations in which the petitioner's deportation would result in a fundamental miscarriage of justice. This accommodation preserves the balance between the Suspension Clause and Congress' plenary authority to control immigration. Thus an alien claiming mistaken identity or the like retains an avenue for habeas relief from deportation.

Because petitioner, Mr. Eze, is in custody, and has been under DHS custody since February 4th, 2003, for a purely out of status charge, he is entitled to habeas review under § 2241. Petitioner has asserted facts alleging confinement constituting a fundamental miscarriage of justice. Mbiya vs. INS, 930 F. Supp. 609 (U.S. District Court).

Petitioner further asserts that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings. 8 U.S.C. § 1105a(a). Habeas Corpus proceedings, the noteworthy exception to the courts of appeals' exclusive jurisdiction, are of course, ~~comm~~ commenced in the district court. See 28 U.S.C. § 2241. Importantly, § 106 also sets forth ten (10) exceptions to the general rule that the Hobbs Act governs judicial review.

[illegible] serious issues of due process violations during his administrative proceedings aside from the DHS repeated terminations and reinstatements of his resident status which rendered him illegal, the terminations which on the face of it have no facially legitimate reason as a matter of law. Petitioner states these issues as follow:

Legal issues raised by Petitioner

1. Legality of the termination of status by the Service (purely legal issue). Termination deemed unlawful and an abuse of discretion. Wong v. Dept. of State, 789 F.2d 2380, 382 (9th Cir. 1986) and following caselaws; Choi v. United States INS, 798 F.2d 1189, 1191 (8th Cir. 1986); Reid v. Engen, 765 F.2d 1457, 1462 (9th Cir. 1985); Rodriquez v. Donovan, 769 F.2d 1344, 1348 (9th Cir. 1985); Shigeto Shimizu vs. Dept of State, civ 89-3741-WMB;

In re ___ , Interim Decision (BIA 1988) and In re Ullah, Interim Decision (BIA, 1987) (DKT # A 26-124 923) make clear that the district Court has subject matter jurisdiction in petitioner's case.

In Wong, the Ninth Circuit held that it was an abuse of discretion to require exhaustion of administrative remedies because "requiring the appellants to leave the United States to submit an application for a new immigration visa at another Consulate is not a remedy for an error in revoking these visas." Id at 1384-85. The Wong Court concluded that the plaintiffs were entitled to litigate the validity of the revocation of their non-immigrant visas that were issued. Id at 1385.

Here, petitioner challenges the constitutionality of the DHS (Boston office, '90) and Vermont Regional Service Centre termination of petitioner's resident status in 1990 and 1991 under the pretense that Mr. Eze "misrepresented facts" about his criminal record by failing to disclose his outstanding

[illegible] to believe that these charges were 'traffic' related."

The DHS imposition of an additional burden on Mr. Eze to "unless you can demonstrate that those charges have been dismissed" as a condition for allowing Mr. Eze retain his resident status clearly is in violation of regulations and his constitutional rights as nowhere in the regulations is it required that an alien not be charged with a crime after arquiring his status (resident) as a condition for maintaining his resident status. The appropriate vehicle would have been removal proceedings if the alien is convicted of deportable offenses.

Moreover, the fact that the Service was willing to reconsider if petitioner's charges acquired after legalization were dismissed raises serious questions as to the legality of the termination in view of the fact that petitioner appears to be eligible and had no conviction whatsoever nor misrepresented material facts, if there was any misrepre-sentation at all. The Service arguement and imposition of additional requirements on Mr. Eze was clearly rejected in Wang and

2. Due Process violations by IJ Patricia Sheppard and the Immigration Court during deportation proceedings. IJ Sheppard and DHS Counsel discussed alien's case five hours prior to Mr. Eze's deportation trial which biased the entire deportation proceedings to the extent that even IJ Straus adopted all records admitted into evidence, including record of outdated termination notice which Mr. Eze signed under duress and which record was ~~at~~ obtained by the Service as a result of egregious violation of the Fourth Amendment rights of the petitioner to the extent that Mr. Eze was arrested and detained without a warrant and was never given the advice contained in regulation § 287.3 and was never taken to his deportation proceeding before IJ Bagley even though he was under DHS custody, during the proceedings.

Orhorogbe vs. INS, 38 F. 3d 488, U.S. Court of Appeals, (9th Cir. 1994)(Evidence obtained as a result of an "egregious violation" of the Fourth Amendment must be suppressed and excluded in administrative proceedings. See also Gonzalez - Rivera vs. INS, 22 F. 3d 1441 (9th Cir. 1994); Adamson v. C.I.R., 745 F. 2d 541 (9th Cir. 1984).

3. It was due process violation for an IJ (Patricia Sheppard) who recused herself on Mr. Eze's case to come back six months later to render a decision on petitioner's bond appeal or bond redetermination.

4. Mr. Eze's due process rights violated when IJ Michael Straus adopted virtually all the records IJ Sheppard had admitted into evidence. Mr. Eze is entitled to a new trial and new evaluation of evidence by new IJ.

Such [illegible] proceed-ing before IJ Michael Straus on Nov 13, 2003.

5. Both IJ Straus and Sheppard denied petitioner the opportunity to apply for relief(s) as required by regulations; that prejudiced Mr. Eze.

6. The DHS liason at Bristol County House of Correction, Mr. Carlos Correiro, and an unidentified DHS agent who worked in concert with Mr. Correiro improperly influenced the IJ Sheppard and the BIA to order the deportation of petitioner and to prevent the BIA from reviewing various constitutional issues he had addressed in his appeal. It is common knowledge among the Staff at Bristol County Jail and Mr. Eze's fellow detainees that Mr. Carlos Correiro had targeted Mr. Eze since IJ Sheppard recused herself from Mr. Eze's Case on July 21st, 2003.

to Mr. Eze that because petitioner had implicated Mr. Correira and the Bristol County Jail in numerous due process violations including preventing petitioner from use of the law library (which order was logged in the daily log book in July of 2003) and access to typewriter and photo copying amenities, in an attempt to derail Mr. Eze's appeal with the BIA, Mr. Correira threatened to contact (call) the BIA on Mr. Eze's matter ("to present my side of the story") which the DHS liason eventually did. Petitioner filed a grievance with the institution.

Because of the interference by Mr. Carlos Correira and the place of detention, Mr. Eze was forced to submit five different set of briefs, including one brief which he submitted through a fellow detainee, Charles Kuume, in an attempt to submit a brief to the BIA which detailed due process by Mr. Correira at the Bristol County Jail in North Dartmouth Massachussetts.

The BIA hastily rendered a decision in Mr. Eze's case on July 20, 2004, exactly 20 days from the deadline given to Mr. Eze to submit his brief. Furthermore, the BIA failed to consider petitioner's request to submit supplemental brief, or to substitute a typed brief for the hand written brief which Mr.

7. The B.I.A allegedly rendered a decision on Mr Eze's bond appeal to The BIA which appeal was filed late pursuant to District Court Judge Nancy Gertner's order authorizing The late appeal. The BIA allegedly rendered The dismissal order on July 24th, 2004 and impermissibly transmitted The order by fax on September 11, 2004, allowing Mr. Eze no time to file petition for review. If this is not a further demonstration of due process violation by the BIA and administrative proceedings, I wonder what is? Not surprisingly, the fax was received from either The BIA or DHS by Carlos Ferreira at The Bristol County Jail.

8. The IJ and BIA failed to consider petitioner's eligibility for the relief of adjustment of status as permanent resident under investor status by virtue of his ownership of Paramount Tour and Charter, Inc, a Motor Coach company. See brief submitted to BIA.

9. found to constitute abuse of discretion.

10. Failure to provide discovery violated petitioner's due process rights and prejudiced him, preventing him from defending his case aside from the lengthy detention which ensued.

11. Petitioner's pro se status prejudiced him and resulted in the deportation order. Had the IJ or the BIA appointed counsel for Mr. Eze to conduct discovery, the government's fabricated charges of "misrepresentation" and "failure to disclose prior criminal charges" would have been discovered for what they were! Lies and malicious prosecution, and Mr. Eze's life could have been spared the damage and humiliation. Mr. Eze clearly had a meritorious claim.

12. The IJ & BIA abused discretion when they failed to terminate deportation proceedings in view of the fact Mr. Eze had filed motion to reopen with Vermont.

... to reopen the immigration of his resident status with the Vermont Regional Service Center. However, that motion was not acted upon due to petitioner's failure to submit the proper filing fee. Mr. Eze claims he was unaware of a filing fee and was never given such advice by the local service agent [illegible] him prepare the motion. Virtually universal practice [illegible] is to terminate deportation proceedings to allow the Vermont Service Center to adjudicate the motion.

14. The failure of the Service to respond to Freedom of Information Request Act (FOIA) which the Service acknowledged receipt of on January 15, 2004, and for which no action has been taken to date constitutes due process violation and the dilatory tactics has prejudiced Mr. Eze to the extent his attorney has been unable to file papers with the court without reviewing the report.

[illegible] combination of the various acts or omissions which presents a colorable claim of due process violation during Mr. Ezzi's administrative proceeding. While most of them present serious problems of statutory or constitutional importance, added together, it is hard to make a case of accidental or isolated experience. These violations are overwhelming and clearly paint a picture of an abuse! Justice mandates that a miscarriage of justice be corrected through a petition for §2241.

Finally, petitioner makes the argument that the deportation order was a result of not being represented by counsel and (2) counsel would have objected to introduction of improper [illegible] signed document obtained in violation of Mr. Ezzi's Fourth Amendment rights because of the egregious conduct of DHS agents both during the warrantless arrest and detention and in precluding him from his own deportation hearing before IJ Kenneth Ryan on January 7th 1993, even though he was under DHS custody.

Furthermore, counsel would readily have pointed out glaring regulatory violations by the Service both during the termination [illegible]

status. For example, appointment of counsel would have helped (i.e. for relief) in adjusting his status as permanent resident under investor status or by a family-based adjustment through marriage to his long-term girlfriend. Petitioner became indigent following the detention having suffered a business loss.

Riley vs. INS, 310 F.3d 1253 (10th Cir. 2002) makes clear that Mr. Ezeh's petition with the First Circuit for review of his final order did not preclude him from filing petition for relief under habeas corpus jurisdiction granted to the U.S. District Court as both petitions are independent actions. Furthermore, filing a habeas corpus petition in the U.S. District Court does not necessarily mean an attack on final orders."

In Riley vs. INS, 310 F.3d 1253 (10th Cir. 2002), the Court stated "We join the reasoning of the Second and Third Circuits and hold that 8 U.S.C. 1105(a) is not the sole remedy for judicial review. The INS did not strip §2241 federal habeas jurisdiction in either 8 U.S.C. §1252(g), INA §242(g), or 8 U.S.C. 1105(a) because neither contains

[illegible] required [illegible] attempting to invoke federal habeas jurisdiction. The Court, in agreeing with the District Court that it had jurisdiction to consider petitioner's challenges to his final deportation order."

It follows that DHS arguments must fail. Contrary to respondent's argument, St. Cyr, 533 U.S. at 310, Calcano-Martinez, 533 U.S. at 351-52, supersede Foroglou and Mattis.

For the foregoing reasons, petitioner prays the Hon. Court grant him 20 days extension of time to file opposition to respondent's "Motion to Dismiss and Opposition to Stay."

Dated October 12, 2004.

Respectfully Submitted,

[signature]

John Ogbeche Ezo

A90-645-123